UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| EUSTOILIA DELATORRE, | Case No. EDCV 17-00786-AS |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

**PROCEEDINGS**

On April 24, 2017, Plaintiff filed a Complaint seeking review of the denial of her application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On September 19, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). The parties filed a Joint Stipulation ("Joint Stip.") on February 8, 2018, setting

forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 17, 2013, Plaintiff, formerly employed as a housekeeper (see AR 73-76, 246), filed an application for Supplemental Security Income, alleging an inability to work because of disabling condition since July 20, 2010. (See AR 51, 191-218). The Commissioner denied Plaintiff's application initially on July 12, 2013 and on reconsideration on January 29, 2014 (see AR 102, 129-34).

On July 16, 2015, the Administrative Law Judge ("ALJ"), Andrew Verne, heard testimony from Plaintiff, who was represented by counsel and assisted by a Spanish language interpreter, and vocational expert Joseph Henry Torres. (See AR 67-90). On October 21, 2015, the ALJ issued a decision denying Plaintiff's application. (See AR 51-59). After determining that Plaintiff had severe impairments -- "C4-C5 disc protraction; and status post right knee arthroplasty" (AR 53)[1] -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 55), the ALJ found that Plaintiff had the residual functional capacity

---

[1] The ALJ found that Plaintiff's other impairments -- left breast mass, hypertension, diabetes, depression and anxiety -- were nonsevere. (AR 53-54).

2

("RFC")[2] to perform medium work[3] with the following limitations: lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and walking for 6 hours in an 8-hour workday with normal breaks; sitting for 6 hours in an 8-hour workday with normal breaks; climbing ramps and/or stairs, ladders, ropes or scaffolds occasionally; and stooping, kneeling, crouching and crawling occasionally. (AR 55-58). The ALJ then determined that Plaintiff was able to perform her past relevant work as a day worker as actually and generally performed (AR 58-59), and was therefore not disabled within the meaning of the Social Security Act. (AR 59).

The Appeals Council denied Plaintiff's request for review on February 22, 2016. (See AR 1-4, 40). Plaintiff now seeks judicial review of the ALJ's decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

3

whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in finding that Plaintiff had the RFC to do medium work *after* February 2014. (See Joint Stip. at 4-9, 13-16).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.

**A. The ALJ Did Not Err in Determining Plaintiff's RFC after February 2014.**

Plaintiff asserts that the ALJ improperly found that Plaintiff had the RFC to do medium work after February 2014, based on evidence about Plaintiff's knee surgeries. Plaintiff claims that "[a]s of approximately February 2014, [Plaintiff's] condition appeared to limit

4

her to sedentary exertion at most." (See Joint Stip. at 4-9). Defendant asserts that the ALJ's determination about Plaintiff's RFC was supported by substantial evidence. (See Joint Stip. at 9-13).

Plaintiff appears to concede that the ALJ properly found that Plaintiff had the RFC to do medium work, at least through February 2014, based on the evidence in the record. (See Joint Stip. at 5-6, citing AR 397-403 [In a report dated June 13, 2013, the examining physician, Bryan H. To, M.D. (internal medicine), following a physical examination and a neurological examination, diagnosed Plaintiff with hypertension, back pain, multiple joint pain (based, in part, on evidence of "deformity in the knees"), fibromyalgia, and depression, and opined that Plaintiff had the functional abilities to push, pull, lift and carry 50 pounds occasionally and 25 pounds frequently, to stand and walk 6 hours in an 8-hour workday, to bend, kneel, stoop, crawl and crouch frequently, to walk on uneven terrain, climb ladders or work with heights frequently, but to not work with moving machinery], AR 96 [On July 1, 2013, State Agency physician, K. Vu, D.O., opined that Plaintiff had the capacity to do medium work based on osteroarthritis with a fairly normal range of motion and a normal gait], and AR 113-15 [On November 15, 2013, State Agency physician, R. Bitonte, M.D., opined inter alia that Plaintiff had the capacities to lift and/or carry 50 pounds occasionally and 25 pounds frequently, to stand and/or walk about 6 hours in an 8-hour workday, to push and/or pull on an unlimited basis, to climb ramps, stairs, ladders, ropes and scaffolds occasionally, to balance frequently, and to stoop, kneel crouch and crawl occasionally]; see also Joint Stip. at 8). In addition, Plaintiff does not challenge the ALJ's decision to give "great weight" to the opinions of Drs. To,

Vu and Bitonte (AR 58), at least through February 2014. (See Joint Stip. at 6).

However, Plaintiff contends that the following evidence in the record from the Riverside County Regional Medical Center does not support the ALJ's RFC determination *as of February 2014*: (1) a Clinic Note dated February 26, 2014, stating that Plaintiff reported she is having difficulty walking due to pain (see AR 588); (2) a Clinic Note dated May 21, 2014, stating that Plaintiff reported having bilateral knee pain which affected her activities of daily living and made her unable to walk one block unassisted, Plaintiff's knees had crepitus and tenderness to palpation, and Plaintiff had received refractory to conservative treatment for her bilateral knee pain (see AR 574); (3) a Clinic Note dated June 27, 2014, stating that Plaintiff's right knee had crepitus, swelling, tenderness to palpation and decreased range of motion (see AR 569); (4) a Record of Operation, stating that Plaintiff had a total right knee arthoplasty on June 30, 2014, and finding that Plaintiff had "[g]enu varum deformity with significant wear noted about the medial compartment" (see AR 565); (5) a Clinic Note dated August 13, 2014, stating that Plaintiff reported her right knee pain was improving and that the pain was controlled with percocet (see AR 561); (6) a Clinic Note dated September 24, 2014, stating that Plaintiff reported her right knee was doing "excellent," and that Plaintiff's left knee had degenerative joint disease (see AR 555); (7) a Treatment Authorization Request dated September 24, 2014, stating that conservative therapy including injections and physical therapy on Plaintiff's left knee had failed, and that Plaintiff's pain continued to affect her activities of daily living (see AR 556); (8) a Clinic Note dated December 5, 2014,

stating that Plaintiff reported her right knee surgery had "good results," and that Plaintiff's left knee had degenerative joint disease, sclerosis and osteophytes (see AR 554); (9) a Discharge Summary stating that Plaintiff had a total left knee arthroplasty on December 8, 2014, and was discharged on December 11, 2014 (see AR 739-41); (10) an Emergency Department note dated January 10, 2015, stating that Plaintiff was complaining of sharp pain in her left knee (which became worse with ambulation) (see AR 531); (11) a Clinic Note dated January 21, 2015, stating that Plaintiff reported that she had persistent pain in the anterior portion of her left knee and that she ambulated with a walker (see AR 551); (12) a Clinic Note dated March 4, 2015, stating that Plaintiff reported that her left knee continued to be painful, and that the source of pain was likely due to the lack of range of motion (see AR 529); and (13) a Clinic Note dated June 24, 2015, stating that Plaintiff reported her left knee was "doing well" and that "pain persists yet is improving," and that the range of movement in Plaintiff's left knee was 0 to 100 degrees (see AR 511). (See Joint Stip. at 6-8). According to Plaintiff, "As of approximately February 2014, a reasonable person would not accept the opinions as to Drs. To, Vu and Bitonte in light of the significant deterioration in [Plaintiff's] condition since their involvement. . . . [¶] As of approximately February 2014, [Plaintiff's] condition appeared to limit her to sedentary exertion at most." (Joint Stip. at 8-9).

Prior to addressing the weight given to the opinions of the examining physician and the State Agency physicians, the ALJ discussed the 2014 evidence concerning Plaintiff's knees as follows:

In June 2014, the claimant underwent right knee total arthroplasty under general anesthesia (Exhibit 14F, p. 583).[4] The surgery was completed without complication and the claimant's prognosis after surgery was good (*id.* at p. 577).[5] X-ray images post surgery showed anatomic alignment (*id.* at p. 465).[6] In December 2014, the claimant underwent left knee total arthoplasty, also performed without complication (*id.* at p. 338).[7] After both operations, the claimant was placed on temporary disability for 12-weeks, which does not meet the Social Security Administration[']s duration requirement (*id.* at p. 259).[8]

After surgery, the claimant started physical therapy (Exhibit 14F, p. 123).[9] The therapy records note gradual improvement with recovery and physical exercises designed to

---

[4] [AR 1093 (Riverside Medical Center Anesthesia Post-Operative Note dated June 1, 2014)].

[5] [AR 1087 (Riverside Medical Center Pre/Post Operative Note dated June 30, 2014)].

[6] [AR 975 (Riverside Medical Center Diagnostic Imaging Report dated June 30, 2014)].

[7] [AR 848 (Riverside Medical Center Report dated December 8, 2014)].

[8] [AR 769 (Riverside County Patient Discharge Form dated December 11, 2014, stating that Plaintiff was Temporarily Disabled for 12 weeks following her left knee surgery); see also AR 739. However, the Court is unable to locate anything in the record indicating that Plaintiff was found to be temporarily disabled for 12 weeks following her right knee surgery.]

[9] [AR 633 (Riverside Medical Center Physical Therapy Knee Evaluation dated July 11, 2014)].

improve strength and range of motion (*id.* at pp. 88-123).[10]
Follow-up treatment records indicate the claimant's hardware
was intact and treatment was limited to continued physical
therapy and pain medication as needed (*id.* at p. 30).[11] The
most recent record notes improvement and reports that the
claimant was doing well (*id.* at p. 1).[12]

(AR 58; bracketed footnote added).

The ALJ then proceeded to address the opinions of the examining physician and the State Agency physicians as follows:

> The undersigned has given great weight to the opinion of
> the consultative examiner, Dr. To (Exhibit 3F). He assessed
> functional limitations that are essentially the same as those
> included in the residual functional capacity assessment
> herein; however, the undersigned further reduced the claimant
> to only occasional postural activities in deference to her
> history of knee surgery. Dr. To personally observed and
> examined the claimant and his findings were consistent with
> the generally mild exam findings in the record.

---

[10] [AR 598-633 (Riverside Medical Center Physical Therapy records dated July 11, 2014 to January 30, 2015)].

[11] [AR 540 (Riverside Medical Center Instructions to the Emergency Patient dated January 10, 2015)].

[12] [AR 511 (Riverside Medical Center General Ortho Clinic Note dated June 24, 2015)].

> The State Agency medical consultants assessed medium residual functional capacity assessments; however, the reconsideration review consultant assessed visual limitations (Exhibits 1A and 3A). The claimant testified that she does not have more than mild visual limitations and no visual limitations were alleged in her application for social security income. Accordingly, greater weight was afforded to the initial level assessment, limiting the claimant to medium work with occasional postural activities and no visual limitations (Exhibit 1A).

(AR 58).

Contrary to Plaintiff's contention, the ALJ's RFC determination took into account the problems Plaintiff experienced with her knees after February 2014. See Valentine v. Comm'r of Social Security Admin., 574 F.3d 685, 690 (9th Cir. 2009)("[A]n RFC that fails to take into account a claimant's limitations is defective.").

As the ALJ noted, evidence in the record reflected the quick resolution of Plaintiff's right knee issues following her June 30, 2014 surgery. (See AR 975, 1087; see also AR 554-55, 561, 619-33). Further, the record does not contain any medical opinion or evidence indicating that as of February 2014 Plaintiff was not able to perform medium work based on her right knee issues. Although Plaintiff claims that Dr. To's June 13, 2013 opinion did not take into consideration the June 13, 2013 X-ray of Plaintiff's right knee (see Joint Stip. at 6, citing AR 403

[California Care Medical Group X-Ray Report, stating that, with respect to Plaintiff's right knee, "[t]here is degenerative changes of the medial joint space apparent as marginal ostrophytes and moderate narrowing of the joint space")], it appears that Dr. To did review that X-ray (see AR 400), and, as Plaintiff admits, the X-ray of Plaintiff's right knee revealed an "[e]ssentially negative study" (AR 403).

The ALJ also noted, as reflected in the record, Plaintiff's quick recovery from her left knee surgery on December 8, 2014 (see AR 739, 848 [a Riverside Medical Center Report dated December 8, 2014 and a Riverside Medical Center Discharge Summary, both stating that Plaintiff had a total left knee arthroplasty on December 8, 2014]).[13] Although Plaintiff complained about pain in her left knee for a few months following the surgery (see AR 610-11 [December 17, 2014], 609 [December 18, 2014], 608 [December 23, 2014], 607 [December 24, 2017], 606 [December 31, 2014], 605 [January 7, 2015], 604 [January 9, 2015], 531 [January 10, 2015], 603 [January 16, 2015], 551, 602 [January 21, 2015], 601 [January 23, 2015], 599 [January 30, 2015], 529 [March 4, 2015]), the issues with her left knee appear to have mostly stabilized by the end of January 2015 (see AR 540 [Riverside Medical Center Instructions to the Emergency Patient dated January 10, 2015, stating: "X-ray was normal. Hardware seems intact. Continue with [physical therapy]. . . Cont pain meds if needed."], 600 [a Riverside Medical Center Physical

---

[13] It is not clear when Plaintiff began to have issues with her left knee. (See AR 588 [a Riverside Medical Center Clinic Note dated February 26, 2014, stating that Plaintiff reported she is having difficulty walking due to pain], 574 [a Riverside Medical Center Clinic Note dated May 21, 2014, stating that Plaintiff reported having bilateral knee pain]).

11

Therapy Outpatient Note dated January 28, 2015, noting improvement in the left knee]), and appear to have been resolved toward the end of June 2015 (see AR 511 [a Riverside Medical Center Clinic Note dated June 24, 2015, stating that Plaintiff reported her left knee was "doing well" and that "pain persists yet is improving", that the incision was well healed, that Plaintiff's range of motion in her left knee was 0 to 100 degrees, that Plaintiff was referred to continuing physical therapy, and that no changes to Plaintiff's current medication were made and no long-term medications were prescribed]). Moreover, there is no medical opinion or evidence in the record (other than the finding of temporary disability for 12 weeks, see AR 769, 739) indicating that as of February 2014, Plaintiff was not able to perform medium work as a result of her left knee issues.

Plaintiff has not presented evidence to contradict the ALJ's determination, generally in accordance with the opinions of Drs. To, Vu, and Bitonte, that Plaintiff had the RFC to do medium work, both before and after February 2014. See Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)("The burden of proof is on the claimant as to steps one to four."). The Court finds that the ALJ's determination that Plaintiff had the RFC to perform medium work as of February 2014 was supported by substantial evidence.

//
//
//

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 27, 2018.

                                              /s/
                                         ALKA SAGAR
                              UNITED STATES MAGISTRATE JUDGE